STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
ALTON WYATT, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted October 31, 1977—Decided November 18, 1977.

Before Judges ALLCORN, MORGAN and HORN.

*Mr. Stanley C. Van Ness,* Public Defender, attorney for appellant (*Ms. Cynthia M. Jacob,* Assistant Public Defender, of counsel and on the brief).

*Mr. Joseph P. Lordi,* Essex County Prosecutor, attorney for respondent (*Mr. Marc J. Friedman,* Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

MORGAN, J. A. D. Convicted by jury of second degree murder, defendant appeals, contending that (1) the trial judge committed plain error in his charge on manslaughter when he failed to define the meaning of malice; (2) he should have granted defendant's motions for acquittal or judgment notwithstanding the verdict, and (3) the 10-15-year State Prison sentence was excessive.

Without going into extended detail concerning the incident which resulted in the death of William Staley, the following provides a summary of the evidence sufficient for consideration of the issues raised herein. Defendant and decedent Staley lived in the same apartment house, but in different apartments and on different floors; defendant lived with his brother Banks Wyatt, and Staley lived with one Eddie Pringle, one of the State's principal witnesses. Also living in the same apartment house, and in the apartment next to defendant's, was Emily Reed, then 13 years of age, with her mother Mabel Reed, both of whom were State's witnesses.

The State's evidence established that William Staley was killed by a stab wound in the abdomen, seven inches long, made by a kitchen knife which passed through decedent's body from the front and emerged from his back. This homicide followed a verbal dispute and physical scuffle between defendant and decedent, apparently about some trivial matter concerning boxes Eddie Pringle had given to defendant and which decedent wanted to remove. According to defendant, this argument, in which defendant received some scratches and some bites, lasted about seven or eight minutes, after which decedent and defendant parted, defendant returning to his apartment. Emily Reed, the 13-year old who lived in the apartment next to defendant's, heard "some fussing and fighting going on," looked out of her door and saw decedent and defendant "fighting or wrestling" and heard decedent tell defendant to "let me go." She thought decedent had gone downstairs after the dispute ended.

At that point Emily told defendant she was going to tell her mother that defendant had winked at her; defendant responded by throwing a fire extinguisher at her. Although defendant admitted throwing the fire extinguisher, he denied that it was thrown at Emily. A short time later Emily's mother returned to the apartment. On hearing her voice Emily opened the door to her apartment, saw her mother,

her mother's boyfriend, Abe Woodson, her sisters, decedent and defendant. Emily testified that as decedent walked past her she saw defendant stab him with a long knife which she had seen on an earlier occasion in defendant's apartment. After the stabbing, defendant dropped the knife.

Emily's mother denied seeing the stabbing. Eddie Pringle, decedent's roommate, testified that he saw defendant stab decedent. Defendant flatly denied doing so, admitting, however, that it was he who pulled the knife out. At no point during the trial, or thereafter, has defendant admitted that it was he who stabbed decedent.

. After the stabbing, defendant left the building. When he was later picked up by police from a description, he had bloodstains on his clothing along with chemicals from the fire extinguisher. Testimony suggested that the knife belonged to defendant's brother Banks, although Banks denied its ownership.

As noted, defendant testified in his own behalf. His position was unequivocal; he was not the one who stabbed decedent and his testimony left room for conjecture, pursued during defendant's summation, that it was either Pringle or Woodson, Mabel Reed's boyfriend, both present at the scene, who was the culpable party.

By agreement in advance of trial, the State declined to seek a first degree murder conviction.

The case was submitted to the jury on the alternative theories of second degree murder and manslaughter and, of course, acquittal. After again asking for the testimony of Emily Reed and for a redefinition of murder and manslaughter, the jury returned a unanimous verdict of second degree murder.

We briefly reject defendant's contentions of error in the denial of his motions for acquittal and for judgment notwithstanding the verdict. The State's evidence was clearly sufficient for jury consideration of his guilt, and ample evidence supported the verdict. *State v. Reyes,* 50 *N. J.* 454,

458–459 (1967); *State v. Kleinwaks*, 68 *N. J.* 328, 335–336 (1975).

We pass to the more difficult questions, raised as plain error, concerning the charge. No objection is made to the instructions concerning second degree murder. Defendant, however, contends that in defining manslaughter as an unlawful homicide without malice, the judge erred by failing to define malice and hence failed to define the offense in adquate terms.

The charge concerning manslaughter reads as follows:

Now, manslaughter, as to the crime of manslaughter, which I've already stated, is one of the offenses included within the scope of this indictment. The essential difference between murder and manslaughter is the absence of malice, and murder in the second degree there must be malice. Manslaughter, it need not be malice.

Manslaughter is the unlawful killing of another without malice, either express or implied, that is, expressed or implied malice, which may be either voluntary upon a sudden heat or passion, or involuntary, but in the commission of some unlawful act.

The absence of malice, either express or implied, as I said, distinguishes the crime from murder, that is murder in the second degree.

It may be voluntary, as a felonious and intentional killing ordinarily committed in the sudden heat or passion, caused by adequate legal provation [sic; provocation].

If you should find beyond a reasonable doubt that the defendant Alton Wyatt is guilty of an unlawful homicide, or that his intent was to do less than great bodily harm to the deceased, this would necessarily mean less than an intent to kill — the law does not find malice in the killing, and thus, such killing is manslaughter.

The judge then repeats the last paragraph of his charge for emphasis and passes on to provocation.

In provocation, if you should find that the defendant committed an unlawful homicide and that his intent was to do great bodily harm or even to kill, but that he acted under provocation, then the degree of his crime would be mitigated from murder in the second degree to manslaughter.

There follows a description, in proper terms and not challenged here, of what constitutes legally adequate provocation.

■ Although not a model of clarity, these instructions do, in our view, provide the jury with enough information to distinguish murder from manslaughter. Hence, the judge twice repeated, and again in response to the jury's question, the instruction that "the law does not find malice in the killing" where defendant intends to do less than grievous bodily harm. In other words, if they should conclude from the evidence that although defendant stabbed the victim, he did not intend serious bodily harm, his guilt would be that of manslaughter, not murder. We conclude that such instructions were adequate to define involuntary manslaughter.

Again the judge defined voluntary manslaughter, although failing to name it as such. The jury was charged that even though the killing were intentionally done, if the defendant acted under the influence of a legally adequate provocation, he could only be held for manslaughter. A proper definition of a legally adequate provocation followed with which defendant has no quarrel.

Even were we to consider lack of amplitude in the charge in its definition of malice as rising to the level of plain error, we would nonetheless be unable to conclude that defendant was prejudiced thereby. In our view, a charge on manslaughter, voluntary or involuntary, was not warranted either by the evidence adduced or by defendant's own contentions. With respect to involuntary manslaughter, nothing in the evidence would permit any jury to conclude that the fatal blow was struck with the intention of causing less than serious bodily harm. From the nature of the weapon used, a kitchen knife, and the wound inflicted, over seven inches long extending through the decedent's abdomen and emerging from his back, no reasonable inference that minor injury was intended is available in the absence of proof that such was the intention. See *State v. Van Duyne*, 43 *N. J.* 369 (1964), *cert.* den. 380 *U. S.* 987, 85 *S. Ct.* 1359, 14 *L. Ed.* 2d 279 (1965). And defendant did not testify that infliction of less than serious bodily harm was his intention; he simply denied that it was he who stabbed decedent.

With respect to voluntary manslaughter, here again the record is bare of evidence even suggesting that the stabbing was done in heat or passion, much less that the provocation was legally adequate to justify a manslaughter charge. Defendant did not so testify, and his testimony would appear to be essential in establishing that his killing of decedent was committed in heat or passion. To the contrary, he testified that he did not stab decedent at all. See *State v. Gosser*, 50 *N. J.* 438, 453–454 (1967). The thesis of the defense was a denial that defendant struck the fatal blow, not that he did so under provocation of any kind. Since we conclude that defendant was favored with a charge to which he was not entitled, any error therein, and we conceive there was none, cannot be regarded as plain error sufficient to require reversal. "Indeed, it gave him another, but undeserved, platform upon which to stand." *State v. Forcella*, 35 *N. J.* 168, 176 (1961).

We do, however, find serious fault with the charge as to a portion thereof not mentioned by defendant either in the trial court or here. The case went to the jury on second degree murder/manslaughter theories, or acquittal. In such circumstances, where the only theories of conviction offered a jury are second degree murder or manslaughter, first degree murder being excluded as a possibility, it is error, and indeed plain error, to charge a jury, as the trial judge did three times, concerning the presumption of second degree murder. In all three instances the jury was clearly charged that "it is presumed that every unlawful killing of another human being is murder in the second degree."

Preliminarily, the charge was incorrect in the form given. The presumption arises only when the essential elements of murder, not an unlawful killing, have been proved beyond a reasonable doubt. *State v. Gardner*, 51 *N. J.* 444, 459 (1968). More critical to this appeal is not only its lack of application in the present context, but the prejudice which

would have been visited upon defendant had manslaughter been a legitimate issue in the case.

The charge concerning the presumption of second degree murder has been justified as intending to favor the defendant, by requiring the jury to presume that a murder, proved such beyond a reasonable doubt, is murder in the second rather than in the first degree. *State v. Gardner, supra* at 457, 459. Its benefit to a defendant is discerned in its function of underscoring the State's burden of proving the three additional elements necessary to elevate the crime from second to first degree murder. *Id.* As noted in *State v. Gardner*:

> \* \* \* The presumption has no role whatever in determining whether (1) there was in fact an intent to kill or inflict grave bodily harm \* \* \* or (2) the homicide was justifiable or excusable, or (3) the homicide was no greater than manslaughter. The State's burden of proving, beyond a reasonable doubt, that the homicide was murder includes the burden of so proving that the killing was not accidental, justified or excusable, or manslaughter. The State must bear this burden throughout the entire trial and the presumption comes into play only after the State has satisfied this mandate. [51 *N. J.* at 459]

The charge concerning the presumption of second degree murder should not be given when the only available bases for conviction are second degree murder or manslaughter. To do so betrays lack of understanding as to what is presumed, which is second degree rather than first degree murder. Moreover, such a charge would seriously prejudice a defendant whose guilt as to second degree murder or manslaughter is legitimately submitted for jury determination. In substance, by giving such a charge in that context, the judge is telling the jury that, on the evidence, they can find defendant guilty of second degree murder or manslaughter but that second degree murder is presumed. Such information is clearly not an accurate statement of controlling law. In summary, the presumption should only be charged, if ever, when the case permits jury consideration of first and second degree murder; in that context, the jury can be told,

under current law, that if they determine that murder has been proved beyond a reasonable doubt, they must presume such murder to be second rather than first degree murder. Where the issue of first degree murder has not been submitted, no mention should be made of the presumption.

Although the presumption is equally inapplicable in cases where only second degree murder is under jury consideration as it should have been in the present matter, the presence of the presumption in the charge lacks the prejudicial quality it has when manslaughter is a legitimate jury issue. Since we have concluded, for reasons already given, that manslaughter should not have been charged, we see no prejudice from the inclusion of the presumption in this case.

As to defendant's contention that the sentence imposed was excessive, we have examined the record and the presentence report and conclude that no mistaken exercise of discretion as to the magnitude of the sentence has been shown.

Affirmed.